**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SCORPCAST, LLC dba HAULSTARS, | |
| Plaintiff, | **Case No.: 2:20-CV-00193-JRG** |
| v. | |
| BOUTIQUE MEDIA et al., | **LEAD CONSOLIDATED CASE** |
| Defendants. | |

**KB PRODUCTIONS'S MOTION TO DISMISS PLAINTIFF'S**
**<u>AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF THE ISSUES ...................................................................... 4

III. BACKGROUND ................................................................................................ 5

III. APPLICABLE LAW ........................................................................................ 7

  A.  Rule 12(b)(6) Standard .............................................................................. 7

  B.  Direct Infringement Through "Use" of a System Claim ....................... 8

  C.  Indirect Infringement .............................................................................. 9

  D.  Willful Infringement ................................................................................ 10

IV. ARGUMENT ..................................................................................................... 11

  A.  This Court Should Dismiss Scorpcast's Direct Infringement Claims for Failing to
      Plausibly Allege that KB Productions "Uses" the Pornhub System ................................ 11

    1.  The asserted claims require a system that communicates with two different user
        devices, one for tagging an uploaded video and a second for playing the video
        and selecting the tag.................................................................................... 11

    2.  Scorpcast's amended complaint identifies three separate entities each of which
        is alleged to perform only a portion of the asserted system claims .......................... 12

    3.  Scorpcast's direct infringement allegations fail because Scorpcast has not pled
        that KB Productions "uses" each and every element of the asserted claims .............. 14

    4.  Scorpcast's allegations of direct infringement also fail because Scorpcast has
        not pled that KB Productions controls the claimed system as a whole and
        benefits from each claimed component ...................................................... 16

  B.  This Court Should Dismiss Scorpcast's Claims of Direct Infringement for Failing
      to Allege What Portions of the Pornhub Website Satisfy the Claim Element "an
      Image not From the Given Video and/or Text" ...................................................... 19

    1.  The asserted claims require a selectable image that is not from the video and/or
        selectable text.................................................................................... 19

    2.  The amended complaint states self-contradictory allegations regarding what
        portions of the Pornhub website satisfy the requirement for a selectable image
        that is not from the video and/or selectable text ...................................... 20

i

C.  This Court Should Dismiss Scorpcast's Claims of Indirect Infringement........................ 21

    1.  Scorpcast's claims for indirect infringement should be dismissed for failing to plausibly allege direct infringement by a third party ................................................... 21

    2.  Scorpcast's claims for pre-suit indirect infringement should be dismissed for failing to sufficiently plead pre-suit knowledge of the '780 patent .......................... 21

    3.  Scorpcast's claims for induced infringement should be dismissed for failing to allege the requisite intent ........................................................................................ 22

    4.  Scorpcast's claims for contributory infringement should be dismissed as inherently contradictory ................................................................................................. 23

D.  This Court Should Dismiss Scorpcast's Claims of Willful Infringement........................ 23

    1.  Scorpcast's claims for pre-suit willful infringement should be dismissed for failing to sufficiently plead pre-suit knowledge of the patent .................................... 23

    2.  Scorpcast's claims for post-suit willful infringement should be dismissed for failing to state a plausible claim for direct infringement ............................................ 24

    3.  Claims for willful infringement cannot be supported by empty boilerplate language ................................................................................................................... 25

V.  CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)................................................................18

*Alexsam, Inc. v. Barnes & Noble, Inc.*,
  No. 2:13-cv-3-MHS-CMC, 2014 WL 12615846 (E.D. Tex. May 12, 2014) .........................14

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  365 U.S. 336 (1961)................................................................9, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................7, 8, 25

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)................................................................9, 10

*Blackburn v. City of Marshall*,
  42 F.3d 925 (5th Cir. 1995) ................................................................7

*Blue Spike, LLC v. Tex. Instruments, Inc.*,
  No. 6:12-cv-499, 2013 WL 12062263 (E.D. Tex. Sept. 27, 2013)................................10

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011)................................................................ *passim*

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)....................... *passim*

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015)................................................................10, 21

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ..........................9

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
  No. 2:15-cv-37-RWS-RSP, 2016 WL 3878246 (E.D. Tex. Mar. 30, 2016)...........................10

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  No. 2:15-cv-1202-WCB, 2017 WL 2190055 (E.D. Tex. May 18, 2017)................................23

i

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)......................................................................................................9, 22

*Grecia v. McDonald's Corp.*,
  724 F. App'x 942 (Fed. Cir. 2018) ...............................................................................16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016)...................................................................................................10

*HaulStars v. KB Prods., LLC*,
  Case No. 2:20-cv-00198-JRG (E.D. Tex.)......................................................................2

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017)...........................................................................8, 9, 16

*LBS Innovations, LLC v. Nokia USA Inc.*,
  No. 15-1972-JRG, 2016 WL 3407611 (E.D. Tex. June 21, 2016) ....................................8, 23

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  572 U.S. 915 (2014)........................................................................................................9, 21

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009).....................................................................................22

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016).......................................................................................8

*Monec Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012)..........................................................................10, 25

*Motiva Patents, LLC v. Sony Corp.*,
  408 F. Supp. 3d 819 (E.D. Tex. 2019) ..........................................................................22

*Nonend Inventions, N.V. v. Apple. Inc.*,
  No. 2:15-cv-466-JRG-RSP, 2016 WL 1253740 (E.D. Tex. Mar. 11, 2016) ...................22, 24

*Preferential Networks IP, LLC v. AT&T Mobility, LLC*,
  No. 2:16-cv-01374-JRG-RSP, 2017 WL 3816109 (E.D. Tex. July 15, 2017) .......................10

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
  No. 15-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ...........................7, 8

*Stragent, LLC v. BMW of N. Am., LLC*,
  No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ........................22

*T-Rex Prop. AB v. Regal Entm't Grp.*,
  No. 6:16-cv-927-RWS-KNM, 2017 WL 4229372 (E.D. Tex. Aug. 31, 2017) .......................24

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)........................................................................................9

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016)......................................................................................10

**Statutes**

35 U.S.C. § 271(a) ....................................................................................................8, 18

35 U.S.C. § 271(b) .........................................................................................................9

35 U.S.C. § 271(c) .......................................................................................................23

I.      **INTRODUCTION**

Plaintiff Scorpcast, LLC dba HaulStars ("Scorpcast") improperly filed an amended complaint (Dkt. 84) alleging that Defendant 9090-7247 Québec Inc., dba KB Productions ("KB Productions")[1] has directly, indirectly, and willfully infringed claims 20, 21, and 25 of U.S. Patent No. 9,965,780 ("the '780 patent").[2]   KB Productions timely moved to strike the amended complaint. *See* Dkt. 93.   For the reasons stated in the motion to strike, Scorpcast's amended complaint should be disallowed.

However, in the unlikely event the Court denies the motion to strike and permits Scorpcast's amended complaint, KB Productions respectfully moves for dismissal of the amended complaint. Scorpcast's amended complaint did not add any new causes of action and made no new allegations with respect to KB Productions.   Accordingly, this motion to dismiss is substantially identical to KB Productions's motion to dismiss Scorpcast's original complaint.  *See* Dkt. 28.

This motion seeks dismissal of Scorpcast's amended complaint for four reasons.

First, **Scorpcast has not alleged KB Productions "uses" each and every element of the claimed system.**   Scorpcast's claims of direct infringement of system claims 20, 21, and 25 of the '780 patent are based on KB Productions' purported use of the Pornhub website.   Direct infringement by "use" of a system requires that the accused party uses each and every element of the claimed system – it must put the system as a whole into service, *i.e.*, it must control the system and obtain benefit from it.  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).   Independent claim 20, the only asserted independent claim, claims a system

---

[1] Scorpcast brought this action against an entity called "KB Productions, LLC" in Québec, Canada (*see, e.g.*, 2:20-cv-00198-JRG, Dkt. 1 at 1).  No such entity exists.  Defendant assumes that Scorpcast intended to sue the entity 9090-7247 Québec Inc., dba KB Productions.

[2] The '780 Patent is attached to Scorpcast's complaint as Exhibit A.  Dkt. 84-1.

comprising code that performs certain functionalities, two of which are relevant to KB Productions'

motion: (i) presenting a "tag" consisting of an image and/or text to a second user device during video

playback and (ii) enabling a navigation event to occur when a user of the second device selects the

tag.  While Scorpcast has alleged that these functionalities are performed by the Pornhub website

(*see, e.g.*, Dkt. 1[3] at ¶¶ 30-40), Scorpcast has not pled any facts showing that it is KB Productions

that puts these functionalities into service.  KB Productions is not alleged to own or operate the

Pornhub website and therefore is not alleged to have control over the system.  Even under Scorpcast's

pled facts, only when the user of the second device decides to view a tagged video does the Pornhub

website present a tag to the second user device.  Similarly, only when the user of the second device

decides to select a tag does the Pornhub website enable a navigation event to occur.  Scorpcast has

not pled that KB Productions "uses" these elements of the Pornhub website and has not pled that KB

Productions has control over a third party user's decision to view a tagged video on the Pornhub

website or to select a tag.  Because KB Productions is not alleged to use each and every element of

the claimed system and is not alleged to own or control the system as a whole, Scorpcast's claims

that KB Productions directly infringes the asserted claims must fail.  *Chapterhouse, LLC v. Shopify,*

*Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *4 (E.D. Tex. Dec. 11, 2018) (finding under

analogous facts that a complaint failed to adequately assert direct infringement when it included

no assertion that the defendant owned or controlled the entire system and no allegation that the

defendant practiced every claim limitation).

    Second, **Scorpcast has not sufficiently pled its claims of direct infringement.**

Independent claim 20 of the '780 patent specifies that a video is tagged with "an image not from the

---

[3] All citations in this motion to "Dkt. 84" are to Dkt. 84 in *Scorpcast, LLC dba HaulStars v. Boutique Media, et al.*, Case No. 2:20-cv-00193-JRG-RSP (E.D. Tex.).

given video and/or text." '780 patent at 47:63-64, 48:2-3.  The claim further requires that both the image and the text must be selectable by a user.  *See id.* at 48:13-19.  But Scorpcast has not identified what component in the Pornhub website meets these claim elements and has, instead, made vague and contradictory allegations that the website might have an infringing image or might have infringing text, or might have both.  But there are no allegations that identify what text or image on the Pornhub website Scorpcast believes satisfies the claim element, leaving KB Productions to guess. As such, Scorpcast's claims for direct infringement are not well-pled and should be dismissed.

Third, **the amended complaint fails to plead a claim for indirect infringement.**  Scorpcast has not pled sufficient facts identifying an act of direct infringement by another that KB Productions has allegedly induced or to which it has contributed.  This alone is fatal to Scorpcast's indirect infringement claims.  Furthermore, a claim for pre-suit indirect infringement requires knowledge of the patent, and Scorpcast has not made any factual allegations supporting pre-suit knowledge. Regarding inducement, Scorpcast has not alleged sufficient facts to show KB Productions had the requisite intent.  And with respect to contributory infringement, Scorpcast's claim is implausible. Scorpcast accuses KB Productions of supplying the hardware and software that operates the Pornhub website to others.  *See* Dkt. 84 at ¶ 56.  But KB Productions is not alleged to own or operate the Pornhub website and Scorpcast has not pled that KB Productions has any control over the computers and computer code that run the Pornhub website.  KB Productions cannot plausibly contribute to others something that it does not have.  For all these reasons Scorpcast's claims of indirect infringement must fail.

Fourth, **the amended complaint fails to adequately plead willful infringement.** Scorpcast's willfulness claims consist of boilerplate language alleging that KB Productions is willfully blind to Scorpcast's patent rights due to an alleged policy or practice of not reviewing

patents.  Such an unsupported allegation cannot support a claim for pre-suit willfulness.  As for post-suit allegations of willful infringement, these must fail as well since the amended complaint does not allege facts sufficient to state a plausible claim for direct infringement by KB Productions or anyone else.

## II.      STATEMENT OF THE ISSUES

1. Do Scorpcast's allegations of direct infringement through "use" of a system – which include no factual support or allegations showing that KB Productions has used each and every element of the claimed system – fail to state a plausible claim for relief?

2. Do Scorpcast's allegations of direct infringement – which include no coherent identification of which portions of the Pornhub website correspond to the claimed image not from the video and/or text – fail to state a plausible claim for relief?

3. Do Scorpcast's allegations of induced infringement – which include no factual support or allegations (i) that a third party performed an act of direct infringement; (ii) that KB Productions had pre-suit knowledge of the patent or that third party acts were infringing; and (iii) that KB Productions had the requisite intent for any third party to infringe the asserted patent – fail to state a plausible claim for relief?

4. Do Scorpcast's allegations of contributory infringement – which include no factual support or allegations (i) that a third party performed an act of direct infringement; (ii) that KB Productions had pre-suit knowledge of the patent or that third party acts were infringing; and (iii) that KB Productions contributes to others a component of the Pornhub website (which it is not alleged to own or operate) – fail to state a plausible claim for relief?

5.  Do Scorpcast's allegations of willful infringement – which include no factual support or allegations (i) that KB Productions had pre-suit knowledge that its acts or the acts of others constituted infringement; and (ii) that do not establish a plausible claim for direct infringement by anyone – fail to state a plausible claim for relief?

## III.    BACKGROUND

Scorpcast accuses KB Productions of direct, induced, contributory, and willful infringement of claims 20, 21, and 25 of the '780 patent.  *See* Dkt. 84 at ¶¶ 24-61.  Claim 20 is an independent claim and claims 21 and 25 depend therefrom.

Claim 20 is directed to a system having "at least one processing device," "a network interface configured to communicate over a network with a video data store," and "non-transitory memory storing programmatic code that when executed by the at least one processing device, cause the system to perform operations." '780 patent at 47:55-60.  The programmatic code causes the system to interact with a first user device, which adds a tag to an uploaded video, and a second user device, which plays the video and selects the tag.

As to the first user device, the system "provide[s] . . . to a first user device a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user-specified position of the given video." *Id.* at 47:61-65.  The system "receive[s], via the user interface . . . , from the first user device an association of a first image and/or a first text with a first start position of the first video," and "store[s] the association." *Id.* at 48:1-8. In summation, a first user device is provided a user interface to add a "tag" to an uploaded video by associating an image not from the video and/or text with a position in the video, and the system stores this tag.

As to the second user device, the system "cause[s] the first image and/or the first text to be presented at the first start position, during playback of the of the first video, in or adjacent to a playback area of a video player via a second user device" and "enable[s] a corresponding navigation event to occur at least partly in response to a user selecting: the first image and/or the first text during a playback of the first video." *Id.* at 48:9-16.  In other words, the second user device plays back the video, the system presents the "tag" at the appropriate position in the video, the second user device selects the tag, and the system causes a corresponding navigation event to occur in the second user device.

Scorpcast's allegations of infringement all stem from how the Pornhub website allegedly operates.  *See, e.g.*, Dkt. 84 at ¶ 30 (referring to the alleged operation of the Pornhub website as the "Accused Instrumentalities").  But KB Productions is not alleged to own or operate the Pornhub website.  *See id.* at ¶ 28 ("Defendant is a content creator of pornographic videos, and operates as a content partner of pornographic websites, including but not limited to Pornhub (www.pornhub.com).").  Further, Scorpcast does not assert that KB Productions controls which users access the Pornhub website or how those users interact with the website.  Nor does Scorpcast assert that KB Productions controls the Pornhub website or any of the hardware and software that runs the website.  Scorpcast has not pled that KB Productions controls whether a "tag" is presented to a user during playback of videos on the Pornhub site or what navigation events occur when a user selects a "tag" on the Pornhub website.  Instead, Scorpcast alleges that control over all of these elements resides with the entity that owns Pornhub.  *See id.* at ¶ 30.

Nevertheless Scorpcast has accused KB Productions of infringement based on allegations that relate to, at best, KB Productions' use of only a small portion of the Pornhub website: its alleged uploading of a video (*id.* at ¶ 31) and alleged adding of tags to the video (*id.* at ¶ 36).  Infringement

cannot lie in such limited activity that does not encompass each and every element of the claim. Scorpcast's allegations of direct, indirect, and willful infringement are legally baseless, factually unsupported, and should be dismissed.

## III.    APPLICABLE LAW

### A.  Rule 12(b)(6) Standard

To state an actionable claim, a plaintiff must allege and provide factual support for every element of the asserted claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Form 18 of Federal Rule of Civil Procedure 84, abrogated in December 2015, "no longer provides a safe harbor for direct infringement claims." *Ruby Sands LLC v. Am. Nat'l Bank of Tex*., No. 15-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016). "Now, to state a claim for direct infringement, a plaintiff ***must explicitly plead facts*** to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Id*. (citations omitted) (emphasis added). To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Pleadings "that offer[] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A complaint fails to state a claim upon which relief may be granted if, as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). First, the Court will accept all well-pled facts as true, and view those facts in the light most favorable to the

plaintiff.  *See LBS Innovations, LLC v. Nokia USA Inc.*, No. 15-1972-JRG, 2016 WL 3407611, at

*2 (E.D. Tex. June 21, 2016).  But the Court ***need not accept*** as true conclusory or contradicted

allegations within a complaint.  *Id.*  Next, the Court will consider "whether those alleged facts state

a claim for relief that is 'plausible on its face.'"  *Id.* (citing *Twombly*, 550 U.S. at 570).  During its

evaluation, a "court  may consider the complaint, any documents attached to the complaint, and

any documents attached to the motion to dismiss that are central to the claim and referenced by

the complaint."  *Ruby Sands*, 2016 WL 3542430, at *2 (internal quotation marks and citation

omitted).

### B.  Direct Infringement Through "Use" of a System Claim

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly

support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any

patented invention, within the United States or imports into the United States any patented

invention during the term of the patent."  35 U.S.C. § 271(a).

"[T]o 'use' a system for purposes of infringement, a party must put the invention into

service, *i.e.*, control the system as a whole and obtain benefit from it."  *Centillion*, 631 F.3d at

1284.  "In order to 'put the system into service,' the end user must be using all portions of the

claimed invention."  *Id.*[4]  Thus, "direct infringement by 'use' of a system claim 'requires a party .

. . to use each and every . . . element of a claimed [system].'"  *Id.*  As the Federal Circuit explained,

"to use a claimed system, what must be 'used' is each element."  *Intellectual Ventures I LLC v.

Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).  Put another way, "to use a system,

---

[4] Notably, divided infringement of method claims is analyzed differently, under the doctrine of
joint infringement.  Joint infringement does not apply to system claims.  *Lyda v. CBS Corp.*, 838
F.3d 1331, 1339 (Fed. Cir. 2016) ("Our cases have applied joint infringement to method claims
and not system claims.").

a person must control (even if indirectly) and benefit from each claimed component." *Id.* "[T]he direct or indirect control required 'is the ability to place the system as a whole into service.'" *Id.* (citing *Centillion*, 631 F.3d at 1284).

### C. Indirect Infringement

There are two types of indirect infringement: induced infringement and contributory infringement.  In either case "a finding of direct infringement is a predicate to any finding of indirect infringement." *Intellectual Ventures I*, 870 F.3d at 1322.  The Supreme Court has made clear, "our case law leaves no doubt that inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'" *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) (holding the same for contributory infringement)).

A claim for induced infringement under 35 U.S.C. § 271(b) must include "a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).  To be liable for induced infringement, the defendant must "[know] that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  To survive a motion to dismiss, a complaint including a claim for induced infringement must: "1) adequately plead direct infringement by defendant's customers; 2) contain facts plausibly showing that defendant specifically intended for its customers to infringe the asserted patents; and 3) contain facts plausibly showing that defendant knew that the customer's acts constituted infringement." *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *3 (E.D. Tex. Aug. 14, 2015) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

Claims for contributory infringement require plausible allegations that: 1) there is an act of direct infringement; 2) components supplied by defendant are "material to practicing the invention"; 3) components supplied by defendant have "no substantial non-infringing uses"; and 4) defendant "knows [its] product[s] [are] especially made or adapted for an infringing use." *Blue Spike, LLC v. Tex. Instruments, Inc.*, No. 6:12-cv-499, 2013 WL 12062263, at *1 (E.D. Tex. Sept. 27, 2013) (citing *In re Bill of Lading*, 681 F.3d at 1337). "[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015).

### D.  Willful Infringement

A claim for willful patent infringement must allege that infringement was "intentional or knowing." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932. Willful infringement requires knowledge of the allegedly infringed patent, and that "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1930; *see also id.* at 1933 ("culpability is generally measured against the knowledge of the actor"); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-37-RWS-RSP, 2016 WL 3878246, at *1 (E.D. Tex. Mar. 30, 2016) ("At the pleading stage, a plaintiff alleging a cause of action for willful infringement must plead facts giving rise to at least a showing of objective recklessness of the infringement risk." (*quoting Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012))); *see also Preferential Networks IP, LLC v. AT&T Mobility, LLC*, No. 2:16-cv-01374-JRG-RSP, 2017 WL 3816109 (E.D. Tex. July 15,

2017) (recommending dismissal of plaintiff's claims for pre-suit willful infringement where there were no facts alleged showing defendants had pre-suit notice of the asserted patents).

## IV.    ARGUMENT

### A.    This Court Should Dismiss Scorpcast's Direct Infringement Claims for Failing to Plausibly Allege that KB Productions "Uses" the Pornhub System

#### 1.    The asserted claims require a system that communicates with two different user devices, one for tagging an uploaded video and a second for playing the video and selecting the tag

Scorpcast has accused KB Productions of infringing independent claim 20 of the '780 patent and claims 21 and 25 that depend therefrom.  Claim 20 has three distinct sections: (i) the hardware elements of the system ("the Hardware Claim Limitations," outlined below in green); (ii) the programmatic code that causes the system to communicate with a first user device that tags an uploaded video ("the Video Tagging Claim Limitations," not outlined below); and (iii) the programmatic code that causes the system to communicate with a second user device that plays the video and selects the tags ("the Video Playback Claim Limitations," outlined below in red). Claim 20 is reproduced below, divided into these three sections.

20. A system, comprising:

> at least one processing device;
> a network interface configured to communicate over a network with a video data store;
> non-transitory memory storing programmatic code that when executed by the at least one processing device, cause the system to perform operations comprising:

> provide over a network, using the network interface, to a first user device a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user-specified position of the given video;

> receive, over the network using the network interface, a first video;

> receive, via the user interface that enables a user to associate an image not from the given video and/or text with a user-specified position of the given video,

11

from the first user device an association of a first image and/or a first text with a first start position of the first video;

store the association of the first image and/or a first text with the first start position;

cause the first image and/or the first text to be presented at the first start position, during playback of the first video, in or adjacent to a playback area of a video player via a second user device;

enable a corresponding navigation event to occur at least partly in response to a user selecting:

the first image and/or the first text during a playback of the first video, wherein the first image and/or the first text is presented in or adjacent to the playback area.

### 2. Scorpcast's amended complaint identifies three separate entities each of which is alleged to perform only a portion of the asserted system claims

Scorpcast alleges that KB Productions directly infringes the asserted claims of the '780 patent by using the Pornhub website.[5]  But Scorpcast's amended complaint does not support this theory as Scorpcast alleges that three separate entities are necessary for direct infringement and never alleges that KB Productions has any control or dominion over the other two entities.

First, Scorpcast alleges that the owner or operator of the Pornhub website satisfies the Hardware Claim Limitations (outlined in green above) because:

30. Pornhub and/or other hub sites, which are video data stores, require their partners (including Defendant) to connect to Pornhub's and/or other hub sites' servers using a network interface and the internet.  Pornhub and/or other hub sites' servers have a network interface for connecting to the internet and users. . . .

---

[5] Scorpcast also alleges that Defendant infringes the patent because "Defendant *made, had made*, used, *imported, provided, supplied, distributed, sold, or offered to sell* products and/or systems, including servers that include at least one processing device, a network interface, and non-transitory memory for storing programmatic code that perform operations according to the claimed inventions of the '780 patent." Dkt. 84 at ¶ 49 (emphasis added).  Scorpcast does not try to plead any facts to support an allegation that Defendant made, had made, imported, provided, distributed, sold or offered to sell infringing systems.  *See generally id.*  The only facts that Scorpcast pleads relate to *using* parts of an allegedly infringing system.

Dkt. 84 at ¶ 30.

Then, Scorpcast alleges that KB Productions' use of the Pornhub website satisfies the

Video Tagging Claim Limitations (not outlined above) because:

> 30. . . . Contained within the Pornhub and/or other hub sites' servers is
> programmatic code stored in non-transitory memory that is used by Defendant to
> create channels for its websites that are displayed within Pornhub and/or other hub
> sites and used by users of the channels.

*Id.*

> 31. Defendant posts videos to at least one channel on Pornhub.com and/or other
> hub sites.
>
> 32. Defendant's videos are stored on Pornhub.com and/or other hub sites.

*Id.* at ¶¶ 31-32.

> 36. When posting a video to Pornhub.com and/or other hub sites, Defendant has the
> option to add Tags to the slider bar.
>
> 37. The Tags allow a user to jump to specific points in the video.
>
> 38. Defendant can add text to the Tag.
>
> 39. Defendant controls the content of the Tags, including for example, what text or
> image appears to the user.

*Id.* at ¶¶ 36-39.

Finally, Scorpcast alleges that a third party user's use of the Pornhub website satisfies the

Video Playback Claim Limitations (outlined in red above) because:

> 30. . . . Pornhub's and/or other hub sites' interface enables a navigation event to
> occur at least in response to a user selecting images and/or text (together "Tags"),
> which are overlaid over the video, resulting in a navigation event opportunity
> (together, the "Accused Instrumentalities").  The video offers several navigation
> event opportunities, by enabling the user to select certain images or text while the
> video is playing.  These are referred to as jump sites.

*Id.* at ¶ 30.

Scorpcast's claims of direct infringement are founded in the actions allegedly taken by three separate entities: the owner and operator of the Pornhub website, KB Productions, and third party users of the Pornhub website.  Scorpcast acknowledges that KB Productions does not own or operate the Pornhub website (or have any control or dominion over the website) and instead alleges that KB Productions is "a content creator of pornographic videos, and operates as a content partner of pornographic websites, including but not limited to Pornhub (www.pornhub.com)." *Id.* at ¶ 28.  Further, Scorpcast never alleges that KB Productions "uses" the Video Playback Claim Limitations.  Instead, Scorpcast alleges that the accused video playback functionality is controlled by the owner and operator of the Pornhub website, not by KB Productions.  *Id.* at ¶ 30 ("***Pornhub's and/or other hub sites' interface enables a navigation event to occur*** at least in response to a user selecting images and/or text (together 'Tags') . . . ." (emphasis added)).

### 3. Scorpcast's direct infringement allegations fail because Scorpcast has not pled that KB Productions "uses" each and every element of the asserted claims

Direct infringement by "use" of a system requires that the accused party uses "***each and every element*** of a claimed system" – the accused infringer must put the system as a whole into service, *i.e.*, it must control the system and obtain benefit from it.  *Centillion*, 631 F.3d at 1284 (ellipses and brackets omitted) (emphasis added); *see also Alexsam, Inc. v. Barnes & Noble, Inc.*, No. 2:13-cv-3-MHS-CMC, 2014 WL 12615846, at *2 (E.D. Tex. May 12, 2014) ("[T]o control the system, the end user must . . . use '*all portions* of the claimed invention'" (emphasis in original)) (quoting *Centillion*, 631 F.3d at 1284); *see also Chapterhouse*, 2018 WL 6981828, at *3-4 (dismissing an infringement allegation that failed to allege that "one entity performs every step of [the asserted system claim]").

Here, taking Scorpcast's allegations as true, KB Productions uses ***some, but not all***, of the elements of the claimed system.  In its amended complaint, Scorpcast describes KB Productions as

a "content partner" to the Pornhub website (Dkt. 84 at ¶ 28) and accuses KB Productions of uploading and tagging videos on the Pornhub website (*id.* at ¶¶ 31-32, 36-39).  Scorpcast then alleges that other, third party "users" of the Pornhub website view these videos and select the tags in the videos.  *Id.* at ¶ 30.  According to Scorpcast's amended complaint, the Pornhub website sits at the center of these tagging, viewing, and selecting actions, separately communicating with KB Productions, on the one hand, to enable tagging of videos, and with third party users, on the other hand, to enable viewing of videos and selecting of tags.  *Id.*  Thus, under Scorpcast's theory of infringement and factual allegations, KB Productions does not use each and every element of the claimed system since it has no involvement in the interactions between the Pornhub website and a third party user relating to viewing videos and selecting tags.

For example, the second-to-last element of claim 20 reads: "cause the first image and/or the first text to be presented at the first start position, during playback of the first video, in or adjacent to a playback area of a video player via a second user device."  '780 patent at 48:9-13.  Scorpcast does not allege that KB Productions uses the portions of the Pornhub website that cause video playback on a second user device.  Instead, Scorpcast alleges that a third party user that is outside the control and dominion of KB Productions uses the playback portion of the Pornhub website.  *See, e.g.*, Dkt. 84 at ¶ 30 ("Pornhub's and/or other hub sites' interface enables a navigation event to occur at least in response to *a user* selecting images and/or text (together 'Tags'), which are overlayed over the video, resulting in a navigation event opportunity (together, the 'Accused Instrumentalities')." (emphasis added)).

As another example, the last limitation of claim 20 reads: "enable a corresponding navigation event to occur at least partly in response to a user selecting: the first image and/or the first text during a playback of the first video, wherein the first image and/or the first text is presented in or adjacent

to the playback area." '780 patent at 48:14-19.  Again, Scorpcast's allegations point to the third party user of the Pornhub website as the one who allegedly uses this limitation, not KB Productions. *See, e.g.*, Dkt. 84 at ¶ 30 ("The video offers several navigation event opportunities, by enabling ***the user*** to select certain images or text while the video is playing.  These are referred to as jump sites." (emphasis added)); *id.* at ¶ 37 ("The Tags allow ***a user*** to jump to specific points in the video." (emphasis added)).

Because KB Productions does not use each and every limitation of the asserted claims, Scorpcast's claims of direct infringement fails.  *Centillion*, 631 F.3d at 1284.

### 4. Scorpcast's allegations of direct infringement also fail because Scorpcast has not pled that KB Productions controls the claimed system as a whole and benefits from each claimed component

The Federal Circuit recently suggested that use of a system could be shown if an accused infringer both controls (even if indirectly) and benefits from each claimed component.  *Intellectual Ventures I*, 870 F.3d at 1329.  The patentee must demonstrate "that the direct infringer obtained 'benefit' from each and every element of the claimed system."  *Id.* (citing *Centillion*, 631 F.3d at 1284).  "In addition, the direct or indirect control required 'is the ability to place the system as a whole into service.'"  *Id.* (same).  Benefiting from the system as a whole is not enough.  *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 946-47 (Fed. Cir. 2018) ("In our recent case, *Intellectual Ventures I* . . . , we rejected the notion that to find direct infringement, an accused infringer needs only to 'benefit from the system as a whole' by deriving a benefit from 'any claimed component of the claimed system.'  Rather, we clarified that the infringer must 'benefit from each claimed component,' i.e., from 'each and every element of the claimed system.'").

Scorpcast has not pled any facts to show that KB Productions benefits from each and every claimed component and, instead, Scorpcast has pled that the owner and operator of the Pornhub website controls the system as a whole.  KB Productions is not alleged to (and does not) own or

operate the Pornhub website.  KB Productions is not alleged to (and does not) control a third party user's decision to view videos or select tags on the Pornhub website.  And KB Productions is not alleged to (and does not) control how the Pornhub website responds to the third party user's actions.

As to benefit, Scorpcast's amended complaint alleges that "Defendant adds Tags to its videos uploaded to Pornhub.com and/or other hub sites to ensure that users view Defendant's videos as premium content."  Dkt. 84 at ¶ 47.  Even a generous interpretation of this allegation does not amount to an allegation that KB Productions obtains a benefit, on a claim-element-by-claim-element basis, from each component of the claimed invention.

As to control of the system, Scorpcast has pled that the owner and operator of the Pornhub website (and not KB Productions) controls the system as a whole, including the claim elements related to playback of a video and causing a navigation event (*i.e.*, the last two elements of claim 20):

> 29. *Pornhub and/or other hub sites allow their partners* to create channels through Pornhub and/or other hub sites, which allow the partners to offer samples of full-length videos intended to induce users to go to the full website of the partner to purchase a membership.
>
> 30. *Pornhub and/or other hub sites, which are video data stores, require their partners* (including Defendant) to connect to Pornhub's and/or other hub sites' servers using a network interface and the internet.  Pornhub and/or other hub sites' servers have a network interface for connecting to the internet and users. *Contained within the Pornhub and/or other hub sites' servers is programmatic code stored in non-transitory memory* that is used by Defendant to create channels for its websites that are displayed within Pornhub and/or other hub sites and used by users of the channels. *Pornhub's and/or other hub sites' interface enables a navigation event to occur* at least in response to a user selecting images and/or text (together "Tags"), which are overlaid over the video, resulting in a navigation event opportunity (together, the "Accused Instrumentalities").  The video offers several navigation event opportunities, by enabling the user to select certain images or text while the video is playing.  These are referred to as jump sites.

Dkt. 84 at ¶¶ 29-30 (emphases added).

17

As described above, claim 20 is directed to a system that has programmatic code that communicates with and controls what occurs on two separate user devices: a first user device for tagging uploaded videos and a second user device for playing videos and selecting tags. Scorpcast has alleged that the owner and operator of the Pornhub website controls this system and its programmatic code. Dkt. 84 at ¶ 30. At most, KB Productions is alleged to use the first user device that interfaces with the Pornhub website. But Scorpcast never alleges that KB Productions controls (or even interacts with) the parts of the Pornhub website that are related to playing videos and selecting tags, which are purportedly covered by the last two claim limitations of claim 20.

The facts in *Chapterhouse* are analogous to the present case. There, defendant Shopify was accused of "using" a system claim from U.S. Patent No. 8,112,356 ("the '356 patent") by integrating its own point of sale ("POS") system with a third party application called "Spently." 2018 WL 6981828, at *3. The asserted claim in *Chapterhouse* was a system claim comprising hardware components such as a database and an electronic receipt generator, the latter performing certain functions such as generating, transmitting, receiving, and initiating transaction-related activities. *Id.*

Shopify moved to dismiss this claim, arguing that the plaintiff "does not identify a ***single entity*** that . . . uses the [accused] system" and the plaintiff does not allege that Shopify has control over the ***entire*** system when the Spently application was being used. *Id.* (emphasis added). This Court agreed and dismissed the claim, noting that "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Id.* (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). This Court found that "[w]hile the Complaint asserts that the Spently app is 'integrated' into the Shopify POS, there is no assertion that [Shopify] owns or controls the Spently app[,] nor is there any assertion that [Shopify] directs, controls, or has any other relationship with the unknown owner of the Spently

app," and there is no allegation that one entity performs every step of the asserted claim, other than "generic and conclusory statement regarding [Shopify]'s use of the broader Shopify POS system." *Id.*, at *4.  For those reasons, this Court dismissed the complaint as to the '356 patent.  *Id.*

Scorpcast's allegations of direct infringement suffer from the same deficiencies as those in *Chapterhouse* and should be dismissed for the same reasons.   Scorpcast acknowledges that KB Productions is merely a "content ***partner*** of pornographic websites, including . . . Pornhub," and that it is ***Pornhub*** that "allow[s] their partners" to work with and through the Pornhub website.  Dkt. 1 at ¶¶ 22-23 (emphasis added).  Just as in *Chapterhouse*, there is no allegation that a "single entity" uses each and every element of the accused system, and there is no allegation that KB Productions "owns or controls" the accused system.  *See* 2018 WL 6981828, at *4.

> **B.  This Court Should Dismiss Scorpcast's Claims of Direct Infringement for Failing to Allege What Portions of the Pornhub Website Satisfy the Claim Element "an Image not From the Given Video and/or Text"**
>
> **1.  The asserted claims require a selectable image that is not from the video and/or selectable text**

Claim 20 of the '780 patent relates to tagging a video and requires that the tag is an image that is not from the video and/or text: "receive, via the user interface that enables a user to associate ***an image not from the given video and/or text*** with a user-specified position of the given video, from the first user device an association of a first image and/or a first text with a first start position of the first video."  '780 patent at 48:1-6 (emphasis added).  The claim further requires that both the image that is not from the video and the text must be selectable by a user: "enable a corresponding navigation event to occur at least partly ***in response to a user selecting***: ***the first image and/or the first text*** during a playback of the first video, wherein the first image and/or the first text is presented in or adjacent to the playback area."  *Id.* at 48:13-19 (emphasis added).

> **2. The amended complaint states self-contradictory allegations regarding what portions of the Pornhub website satisfy the requirement for a selectable image that is not from the video and/or selectable text**

KB Productions cannot determine what images or text (or combination thereof) Scorpcast alleges satisfies the claim elements "an image not from the given video and/or text" and "in response to a user selecting: the first image and/or the first text." *Id.* at 47:63-64, 48:2-3, 48:14-15.

First, Scorpcast's amended complaint is self-contradictory. Scorpcast initially defines "Tags" on the Pornhub website as "images and/or text." Dkt. 84 at ¶ 30. Then, Scorpcast asserts that KB Productions "can add text to the Tag" (but does not assert that KB Productions can add an image). *Id.* at ¶ 38. But in the very next paragraph Scorpcast changes its claim by alleging that KB Productions "controls the content of the Tags, including for example, what text or image appears to the user." *Id.* at ¶ 39. KB Productions cannot ascertain from the amended complaint if Scorpcast contends the tag is an image, text, or both and cannot determine if Scorpcast accuses KB Productions of direct infringement because it has tagged a video with an image or with text.

Second, Scorpcast has not actually identified any text or any images (or combination thereof) on the Pornhub website that allegedly meets this claim element, leaving KB Productions to guess. On the Pornhub website, there is a tag for videos referred to as an "Action Tag." But an Action Tag does not have an image not from the video[6] or selectable text[7] as required by the claim.

---

[6] A video tag on the Pornhub website is referred to as an "Action Tag." An Action Tag is added to a video by choosing a text description of an action in the video from a dropdown menu and clicking the "Add" button at the time in the video where the action occurs. Thus, an Action Tag can only comprise text but not an image. *See* https://help.pornhub.com/hc/en-us/articles/115008142828-Video-Tags (Please note this link contains explicit content).

[7] An Action Tag appears when a user's mouse pointer is positioned over a gray indicator in a video's player bar. If the user moves the mouse pointer in an attempt to click on (select) the Action Tag's text description, the mouse pointer will necessarily move off of the video's player bar and the Action Tag will disappear as the Action Tag's text description is only displayed when the mouse pointer is positioned on or near the video's player bar. *See, e.g.,* https://www.pornhub.com/view_video.php?viewkey=ph5eb9a4ae10307 (Please note this link

KB Productions is uncertain whether Scorpcast instead believes some other video tag on the Pornhub website infringes.  Scorpcast's theory of infringement is not sufficiently pled and its claims for direct infringement should be dismissed.

### C.  This Court Should Dismiss Scorpcast's Claims of Indirect Infringement

#### 1.  Scorpcast's claims for indirect infringement should be dismissed for failing to plausibly allege direct infringement by a third party

It is black letter law that "where there has been no direct infringement, there can be no inducement of infringement."  *Limelight*, 572 U.S. at 922.  Likewise, contributory infringement requires a direct infringer.  *Aro Mfg.*, 365 U.S. at 341.  Scorpcast has not alleged any facts supporting direct infringement by the third parties it identifies: KB Productions' customers, personnel, contractors, or suppliers (*see* Dkt. 84 at ¶¶ 55-56).  Any allegation that KB Productions is a direct infringer would not automatically apply to these third parties.  There is no reason to believe (and no allegation made) that the actions KB Productions allegedly takes in tagging uploaded content on the Pornhub website would also be carried out by its customers, personnel, contractors, or suppliers who are not alleged to have tagged any uploaded content.  Because these third parties are not alleged to perform the same actions that KB Productions allegedly performs, Scorpcast must provide allegations showing how these third parties directly infringe.  It has not done so and therefore Scorpcast's claims of indirect infringement should be dismissed.

#### 2.  Scorpcast's claims for pre-suit indirect infringement should be dismissed for failing to sufficiently plead pre-suit knowledge of the '780 patent

A claim for inducing infringement requires pleading the defendant had knowledge of the patent.  *Commil*, 135 S. Ct. at 1926 ("[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" (quoting

---

<span style="color:red">contains explicit content</span>.  The linked video is exemplary.  It does not belong to KB Productions and was not uploaded or tagged by KB Productions).

*Global-Tech*, 563 U.S. at 766)).  Similarly, a claim for contributory infringement requires pleading the defendant had knowledge that the product or component it sells is "especially made or especially adapted for use in an infringement" of an asserted patent.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).  In either case, the knowledge requirement can be met by properly pleading willful blindness.  *See Global-Tech*, 563 U.S. at 766-68; *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 828 (E.D. Tex. 2019) (collecting relevant Supreme Court and Federal Circuit cases).

But Scorpcast's allegations regarding willful blindness (Dkt. 84 at ¶¶ 58-59) are insufficient boilerplate and contain no factual allegations.  *See Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-cv-466-JRG-RSP, 2016 WL 1253740, at *3 (E.D. Tex. Mar. 11, 2016) ("[Defendant]'s policy of asking its employees to ignore patents and patent applications does not per-se constitute 'willful blindness.'  The Court finds that more must be alleged to show a policy of ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and rise to the level of 'willful blindness.'") (citation omitted), *report and recommendation adopted*, 2016 WL 1244973 (E.D. Tex. Mar. 30, 2016).  Accordingly, the amended complaint cannot support Scorpcast's claims for pre-suit indirect infringement and these claims should be dismissed.

### 3.  Scorpcast's claims for induced infringement should be dismissed for failing to allege the requisite intent

Scorpcast's allegations that KB Productions had the requisite intent to induce infringement are wholly unsupported by any factual allegations.  Merely pleading unspecified "advising, encouraging, or directing" or "distributing instructions" (Dkt. 84 at ¶ 55) without pointing to a single supporting example is insufficient to demonstrate intent.  *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *9 (E.D. Tex. Mar. 3, 2017) ("Generic

allegations that [defendants] provide instructional materials along with accused products, without more, are insufficient to create a reasonable inference of specific intent for purposes of an induced infringement claim." (citation omitted)).   Therefore, Scorpcast's claims for induced infringement should be dismissed.

### 4.   Scorpcast's claims for contributory infringement should be dismissed as inherently contradictory

Scorpcast's allegations for contributory infringement are inconsistent and not supported by factual allegations.  Scorpcast alleges that KB Productions contributes to the infringement of others by supplying them with the hardware and software of the Pornhub website.  *See* Dkt. 1 at ¶ 50.  But this allegation contradicts Scorpcast's acknowledgement that KB Productions does not own or operate the Pornhub website (*see id.* at ¶ 22).  *LBS Innovations,* 2016 WL 3407611, at *2 ("[T]he Court need not accept as true contradictory allegations and allegations contradicted by other allegations within Plaintiff's own complaint.") (citation omitted).  KB Productions cannot "offer[] to sell or sell[] within the United States or import[] into the United States a component" of the Pornhub website when it does not own or operate the Pornhub website.  *See* 35 U.S.C. § 271(c). For this reason Scorpcast's claims of contributory infringement should be dismissed.

### D.   This Court Should Dismiss Scorpcast's Claims of Willful Infringement

### 1.   Scorpcast's claims for pre-suit willful infringement should be dismissed for failing to sufficiently plead pre-suit knowledge of the patent

Scorpcast's claims for pre-suit willful infringement fail because Scorpcast has not pled sufficient facts to show that KB Productions had knowledge of the allegedly infringed patent before service of the complaint.  *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL 2190055, at *3 (E.D. Tex. May 18, 2017) (Even "a party's pre-suit knowledge of a patent is not sufficient, by itself, to find 'willful misconduct' of the type that may

warrant an award of enhanced damages." (alteration, quotation, and internal quotation marks omitted)).

The only allegation that KB Productions had pre-suit knowledge of the asserted patent is premised on an accusation of willful blindness: "on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights." Dkt. 84 at ¶ 58. First, KB Productions is unaware of any Court finding that willful blindness can support an allegation of willful infringement. *See Nonend Inventions*, 2016 WL 1253740, at *2 (declining to address whether "willful blindness" can serve as a substitute for actual knowledge in a willful infringement allegation). Second, Scorpcast does not allege *any* facts backing this allegation and such boilerplate language cannot support willful blindness. *Id.*, at *3 ("[Defendant]'s policy of asking its employees to ignore patents and patent applications does not per-se constitute 'willful blindness.' The Court finds that more must be alleged to show a policy of ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and rise to the level of 'willful blindness.'") (citation omitted). Accordingly, Scorpcast's claims for pre-suit willful infringement should be dismissed.

### 2. Scorpcast's claims for post-suit willful infringement should be dismissed for failing to state a plausible claim for direct infringement

Scorpcast's claims for post-suit willful infringement fail as well since the amended complaint does not allege facts sufficient to state a plausible claim for direct infringement. *See supra* at Sections IV.A-B; *see also T-Rex Prop. AB v. Regal Entm't Grp.*, No. 6:16-cv-927-RWS-KNM, 2017 WL 4229372, at *10 (E.D. Tex. Aug. 31, 2017) ("Plaintiff states a plausible claim for post-suit willful infringement [when the] Complaint . . . alleges facts sufficient to state a plausible

claim for direct infringement . . . .").  For this reason, Scorpcast's claims for post-suit willful infringement should be dismissed.

### 3.  Claims for willful infringement cannot be supported by empty boilerplate language

Scorpcast filed eighteen nearly identical complaints in June against content partners of the Pornhub website.  *See* Case Nos. 2:20-cv-00192-193, 195-210.  Each complaint, with no regard to the fact that each is against a different entity, has the same exact boilerplate language alleging willfulness.  A complaint must be plausible.  And a "plaintiff alleging a cause of action for willful infringement must ***plead facts*** giving rise to at least a showing of objective recklessness of the infringement risk."  *Monec*, 897 F. Supp. 2d at 236 (emphasis added) (quotation and internal quotation marks omitted).  That Scorpcast used the same empty language in eighteen different complaints against completely different entities shows that the language is meaningless boilerplate and the amended complaint here does not plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary claims or elements.  *Twombly*, 550 U.S. at 556.

## V.    CONCLUSION

For the foregoing reasons, Scorpcast's claims for direct, indirect, and willful infringement should, respectfully, be dismissed in their entirety.

Dated: February 19, 2021                    Respectfully submitted,

                                            */s/ Frank M. Gasparo*
                                            Frank M. Gasparo
                                            State Bar No. 2939833
                                            Christopher M. Gerson
                                            (Admitted *Pro Hac Vice*)
                                            Ralph A. Dengler
                                            State Bar. No. 2796712
                                            VENABLE LLP
                                            1270 Avenue of the Americas, 24th Floor
                                            New York, NY 10020
                                            Phone: 212-307-5500
                                            Facsimile: 212-307-5598
                                            fmgasparo@venable.com
                                            cmgerson@venable.com
                                            radengler@venable.com

                                            Jonathan M. Sharret
                                            (Admitted *Pro Hac Vice*)
                                            VENABLE LLP
                                            1290 Avenue of the Americas, 20th Floor
                                            New York, NY10104
                                            Phone: 212.218.2100
                                            Facsimile: 212.218.2200
                                            jmsharret@venable.com

                                            JaeWon Lee
                                            (Admitted *Pro Hac Vice*)
                                            VENABLE LLP
                                            2049 Century Park East, Suite 2300
                                            Los Angeles, California 90067
                                            Phone: 310.229.9900
                                            Facsimile: 310.229.9901
                                            jlee@venable.com

                                            Melissa R. Smith
                                            State Bar No. 24001351
                                            GILLAM & SMITH, LLP
                                            303 South Washington Avenue
                                            Marshall, Texas 75670
                                            Phone: 903.934.8450
                                            Facsimile: 903.934.9257
                                            melissa@gillamsmithlaw.com

                                            *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on February 19, 2021, I caused the foregoing document to be

electronically submitted to the clerk of court for the U.S. District Court, Eastern District of

Texas, using the electronic case filing system of the court. I hereby certify that all counsel of

record who have consented to electronic service are being served with a copy of this document

via the Court's CM/ECF system per Local Rule CV-5(a)(3).


                                         /s/ *Melissa R. Smith*
                                         Melissa R. Smith