# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SCORPCAST, LLC d/b/a HAULSTARS, | § § § | |
| *Plaintiff,* | § § | Case No. 2:20-cv-00193-JRG-RSP |
| v. | § § | (LEAD CASE) |
| BOUTIQUE MEDIA, | § § § | |
| *Defendant.* | § | |
| KB PRODUCTIONS, LLC, | § § | Case No. 2:20-cv-00198-JRG-RSP |
| *Defendant.* | § § | (MEMBER CASE) |
| ALL 4 HEALTH SRL, | § § | Case No. 2:20-cv-00192-JRG-RSP |
| *Defendant.* | § § | (MEMBER CASE) |
| MANICA MEDIA SL, | § § | Case No. 2:20-cv-00200-JRG-RSP |
| *Defendant.* | § § | (MEMBER CASE) |
| OANASUN ENTERTAINMENT SRL, | § § | Case No. 2:20-cv-00128-JRG-RSP |
| *Defendant.* | § § | (MEMBER CASE) |
| BRAVOMAX SERVICES LIMITED, | § § | Case No. 2:20-cv-00210-JRG-RSP |
| *Defendant.* | § § | (MEMBER CASE) |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court is the Opening Claim Construction Brief filed by Scorpcast, LLC dba

Haulstars ("Plaintiff") (Dkt. No. 136),[1] the Responsive Claim Construction Brief filed by All 4

Heath SRL, Oanasun Entertainment SRL, 9090-7247 Québec Inc., dba KB Productions, Bravomax

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

Services Limited, Manica Media SL, and Boutique Media (collectively the "Defendants") (Dkt. No. 150), and Plaintiff's Reply Brief (Dkt. No. 153). On April 21, 2021, the Court held a hearing on issues of claim construction and claim definiteness. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

**Table of Contents**

I.      **BACKGROUND** ................................................................................................ **3**

II.     **LEGAL PRINCIPLES** ...................................................................................... **4**

    A.    Claim Construction .................................................................................... 4

    B.    Departing from the Ordinary Meaning of a Claim Term ......................... 7

    C.    Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) .................. 8

III.   **AGREED CONSTRUCTIONS** ......................................................................... **8**

IV.   **CONSTRUCTION OF DISPUTED TERMS** .................................................. **9**

    A.    "a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user specified position of the given video" and "an image not from the given video" ................ 9

    B.    "receive, over the network" ................................................................... 122

    C.    "an association of a first image and/or a first text with a first start position of the first video" ............................................................................... 155

    D.    "cause the first image and/or the first text to be presented at the first start position, during playback of the first video" ........................................ 17

    E.    "in or adjacent to a playback area of a video player" .......................... 19

    F.    "scrubber area" ..................................................................................... 200

V.     **CONCLUSION** .............................................................................................. **25**

## I.     BACKGROUND

Plaintiff alleges infringement of U.S. Patent No. 9,965,780 ("'780 Patent"). The '780 Patent is entitled System and Methods for Providing User Generated Video Reviews. The application leading to the '780 Patent was filed on August 28, 2017 and lists an earliest priority date of April 18, 2012.

In general, the '780 Patent is directed to technology for sharing video content such as video reviews of products or services.

The abstracts of the Asserted Patents are identical and provide:

Methods and systems for content aggregation and distribution are described. Video content may be received from a plurality of sources. The video content may be associated with metadata identifying items included within the video content. A video player may be provided which enables video content to be displayed on a user terminal, and a control may be provided enabling the user to quickly navigate to specific portions of the video content. A viewer of the video content may, in turn, author and provide additional video content. The video player may be embeddable.

Claims 20 and 25 of the '780 Patent (with corrections listed in the May 8, 2018 Certificate of Correction) are exemplary and recite:

**20**. A system, comprising:
at least one processing device;
a network interface configured to communicate over a network with a video data store;
non-transitory memory storing programmatic code that when executed by the at least one processing device, cause the system to perform operations comprising:
    provide over a network, using the network interface, to a first user device *a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user-specified position of the given video*;
    *receive, over the network* using the network interface, a first video;
    receive, via the user interface that enables a user to associate an image not from the given video and/or text with a user-specified position of the given video, from the first user device *an association of a first image and/or a first text with a first start position of the first video*;
    store the association of the first image and/or a first text with the first start position;

> **cause the first image and/or the first text to be presented at the first start position, during playback of the first video, in or adjacent to a playback area of a video player** via a second user device;
>> enable a corresponding navigation event to occur at least partly in response to a user selecting:
>>> the first image and/or the first text during a playback of the first video, wherein the first image and/or the first text is presented in or adjacent to the playback area.

> **25**. The system as defined in claim 20, wherein the video player is configured to:
>> display the first image and/or the first text in a ***scrubber area***, the scrubber area comprising a slider tool that enables a user to scrub forwards through the first video by dragging the slider tool.

(emphasis added).

## II.     LEGAL PRINCIPLES

### A.     Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Phillips*, 415 F.3d at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Id*. at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Id*. at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms

carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry … begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if

it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Prosecution history is another tool to supply the proper context for claim construction. Prosecution history, like the specification, provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id.* at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id.* Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for

example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

### B.     Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis*

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

*Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C.     Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Nautilus*, 572 U.S. at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

## III.    AGREED CONSTRUCTIONS

The parties have agreed to constructions set forth in their Joint Claim Construction Chart Pursuant to Rule 4-5(d) (Dkt. No. 155). Based on the parties' agreement, the Court hereby adopts the agreed constructions.

## IV.    CONSTRUCTION OF DISPUTED TERMS

### A.    "a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user specified position of the given video" and "an image not from the given video"

| Disputed Term[3] | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user specified position of the given video"<br><br>• '780 Patent Claim 20 | No construction necessary, plain and ordinary meaning. | Plain meaning, i.e., "a user interface that makes it possible for a user to associate, with respect to a given video, an image from a source other than the given video, text, and both with a user-specified start position of the given video." |
| "an image not from the given video"<br><br>• '780 Patent Claim 20 | No construction necessary, plain and ordinary meaning. | Plain meaning, i.e., "an image from a source other than the given video." |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

### The Parties' Positions

Plaintiff submits: The meaning of this term is plain without construction. It would be unhelpful to change "enable" to "makes it possible" as "enable" is a common word that is understandable without explanation. It would be improper to change "not from the given video" to "from a source other than the given video" as the claim language "has nothing to do with the 'source' of the video." Indeed, the patentee chose to use the "from a source other than" language in Claim 1 but not in Claim 20. Dkt. No. 136 at 7–10.

---

[3] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest-level claim in each dependency chain is listed, and (2) only asserted claims identified in the parties' Joint Claim Construction Chart Pursuant to Rule 4-5(d) (Dkt. No. 155) are listed.

Defendants respond: The user interface of the claims must make it possible for the user to "(i) associate an image with a position of the [given] video, (ii) associate text with a position of the [given] video, and (iii) associate both an image and text with a position of the [given] video." An interface must enable all three functions to satisfy the limitation. This is what "and/or" means in the term. This is how the patentee intended the term "and/or" to be interpreted, as explained during prosecution of the related application. There, the applicant modified claim language directed to associating a video segment with a different segment rating "or" comments to specify that the association was with a different segment rating "and/or" comments. In conjunction with the amendment, the applicant argued that the prior art did not disclose the limitation because it did not disclose associating a video segment with a different segment rating "and" comments. Further, the image that is associated with the position of the given video is expressly "not from the given video." This means it is from a source other than the given video. The term should be construed to "clarify that the claimed image not from the given video cannot comprise a frame (whether full- or reduced thumbnail size) because the source of that frame is the video itself." And throughout the patents of the '780 Patent family, "not from" and "from a source other than" are used synonymously. Dkt. No. 150 at 11–21.

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '780 Patent Figs.16C, 16D, col.2 l.65 – col.3 l.7, col.28 l.63 – col.29 l.1, col.34 ll.45–60, col.35 ll.7–16, col.35 ll.25–38, col.37 ll.24–25; Dkt. No. 150-2[4] at 6, 13; Dkt. No. 150-3[5] at 5–6; Dkt. No. 150-5 at 3–4, 16–17; Dkt. No. 150-4[6]

---

[4] The '780 Patent lists a claim of priority to the application that issued as U.S. Patent No. 8,635,169 through a series of continuation and continuation-in-part applications. '780 Patent, at [63] Related U.S. Application Data.
[5] The '780 Patent is related to U.S. Patent No. 9,741,057 through a shared priority claim to, inter alia, the application that issued as U.S. Patent No. 8,682,209. '780 Patent, at [57] Related U.S. Application Data; U.S. Patent No. 9,741,057, at [57] Related U.S. Application Data, available at http://patft.uspto.gov/netahtml/PTO/srchnum.htm.
[6] The '780 Patent lists a claim of priority to the application that issued as U.S. Patent No. 9,754,296 as a continuation of that application. '780 Patent, at [63] Related U.S. Application Data.

at 5; Dkt. No. 150-6 at 3–5, 19; Dkt. No. 150-7[7] at 13–14, 16. **Extrinsic evidence**: *New Oxford American Dictionary* at 570 (3d ed. 2010), "enable" (Dkt. No. 150-1 at 5).

Plaintiff replies: As described in the patent, the ability to upload images is an optional feature of the user interface. Thus, a user interface must enable only one or more of the three associations. Further, "nothing in the intrinsic record defines 'image not from a given video' as being equivalent to 'image from a source other than the given video.'" Dkt. No. 153 at 3–5.

Plaintiff cites further **intrinsic evidence** to support its position: '780 Patent col.2 l.65 – col.3 l.1.

### Analysis

There are two issues in dispute. First, whether the user interface must enable the user to make three distinct associations: (1) an image with a start position, (2) a text with a start position, and (3) both an image and a text with a start position. The user interface must enable both an association between an image with a start position and a text with a start position, but does not require associating both and image and text with a start position. Second, whether "an image not from the given video" is necessarily from a source other than the given video. It is.[8]

The user interface must enable the user to associate both an image with a video and text with a video position, but does not require associating both a user and text with a video position. This stems from the plain meaning of "and/or" in "a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user specified position of the given video."

---

[7] The '780 Patent is related to U.S. Patent No. 9,832,519 through a shared priority claim to, inter alia, the application that issued as U.S. Patent No. 8,682,209. '780 Patent, at [57] Related U.S. Application Data; U.S. Patent No. 9,832,519, at [57] Related U.S. Application Data (Dkt. No. 150-8 at 2–3).

[8] Defendants also propose that the phrase "user specified position" in the term at issue should be construed as "user-specified start position." Defendants did not present any argument or evidence for rewriting this phrase to require the position be a "start position" and the Court discerns no reason to do so.

The image that is associated with the video position, namely, the "image not from the given video" is necessarily from a source other than the given video. Again, this is the plain meaning of the claim language. If the image is sourced from the given video, it is from the given video.

Accordingly, the Court construes this term as follows:

- "a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user specified position of the given video" means "a user interface that enables a user to associate, with respect to a given video, (1) an image not from the given video with a user-specified position of the given video and (2) text with the user-specified position of the given video"; and

- "an image not from the given video" means "an image from a source other than the given video."

**B.    "receive, over the network"**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "receive, over the network"<br><br>• '780 Patent Claim 20 | No construction necessary, plain and ordinary meaning. Not indefinite. | Indefinite: unclear antecedent basis. |

**<u>The Parties' Positions</u>**

Plaintiff submits: The antecedent basis for "the network" in this term is the network recited in the phrase "provide over a network, using the network interface, to a first user device a user interface" found in the "non-transitory memory storing programmatic code … to perform operations comprising" clause. The earlier-recited "network" in the phrase "a network interface configured to communicate over a network with a video data store" does not create any confusion regarding "the network." The "network" of the network-interface term refers to the capability of

the network interface to communicate over one or more networks. The "network" of the "provide" and "receive" steps of the non-transitory-memory clause is one of the networks over which the network interface can communicate. But the "provide" and "receive" steps need not be performed over all the networks of the network interface. Dkt. No. 136 at 10–12.

Defendants respond: There are two distinct networks recited in the claim and there is no way to determine which network is the antecedent for "the network" in the phrase "receive, over the network using the network interface, a first video." This means the source of the first video is not reasonably certain. It could be the "video data store" recited in "a network interface configured to communicate over a network with a video data store" or it could be from the first user device recited in "provide over a network, using the network interface, to a first user device a user interface." This ambiguity renders the term, and the claim, indefinite. Dkt. No. 150 at 21–24.

In addition to the claims themselves, Defendants cite the following **intrinsic evidence** to support their position: '780 Patent Fig.2, col.17 ll.34–48; Dkt. No. 150-8 Cl. 9, 16; Dkt. No. 150-9[9] Cl. 1, 21; Dkt. No. 150-10[10] Cl. 1, 20; Dkt. No. 150-11[11] Cl. 1, 18, 24; Dkt. No. 150-12[12] Cl. 1, 19; Dkt. No. 150-13[13] Cl. 1, 9, 20, 26.

[9] The '780 Patent is related to U.S. Patent No. 9,703,463 through a shared priority claim to, inter alia, the application that issued as U.S. Patent No. 8,682,209. '780 Patent, at [57] Related U.S. Application Data; U.S. Patent No. 9,703,463, at [57] Related U.S. Application Data.

[10] The '780 Patent is related to U.S. Patent No. 10,205,987 through a shared priority claim to, inter alia, the application that issued as U.S. Patent No. 8,682,209. '780 Patent, at [57] Related U.S. Application Data; U.S. Patent No. 10,205,987, at [57] Related U.S. Application Data.

[11] The '780 Patent is related to U.S. Patent No. 10,560,738 through a shared priority claim to, inter alia, the application that issued as U.S. Patent No. 8,682,209. '780 Patent, at [57] Related U.S. Application Data; U.S. Patent No. 10,560,738, at [57] Related U.S. Application Data.

[12] The '780 Patent is related to U.S. Patent No. 10,506,278 through a shared priority claim to, inter alia, the application that issued as U.S. Patent No. 8,682,209. '780 Patent, at [57] Related U.S. Application Data; U.S. Patent No. 10,506,278, at [57] Related U.S. Application Data.

[13] The '780 Patent is related to U.S. Patent No. 9,899,063 through a shared priority claim to, inter alia, the application that issued as U.S. Patent No. 8,682,209. '780 Patent, at [57] Related U.S. Application Data; U.S. Patent No. 9,899,063, at [57] Related U.S. Application Data.

Plaintiff replies: The "receive, over the network…" term is found in the "non-transitory memory" clause of the claim, along with a "provide over a network…" term whereas the "network interface configured to communicate over a network" is outside the non-transitory memory clause. "Because both appear in the configuration of the non-transitory memory term, it is with reasonable certainty that 'the network' refers to the 'a network' within the same configuration." Further, the claim is directed to how the video is received (over the network), but is silent on the source of the received video. Dkt. No. 153 at 5–7.

Plaintiff cites further **intrinsic evidence** to support its position: '780 Patent col.11 ll.12–50, col.17 ll.40–45.

<u>**Analysis**</u>

The issue in dispute is whether the meaning of "the network" in the phrase "receive, over the network, using the network interface, a first video" is reasonably certain. It is.

The Court agrees with the Plaintiff that a reasonable reading of the entire claim indicates that the network in the "receive over the network …" term is the same network as in the "provide over a network …" term. This is the natural reading of Claim 20, which provides:

> **20**. A system, comprising:
> …
> a **network interface** configured to communicate over a network with a video data store;
> **non-transitory memory** storing programmatic code that when executed by the at least one processing device, cause the system **to perform operations comprising**:
>> **provide over a network**, using the network interface, to a first user device a user interface that enables a user to associate, with respect to a given video, an image not from the given video and/or text with a user-specified position of the given video;
>> **receive, over the network** using the network interface, a first video;
>>> … .

'780 Patent col.47 ll.54–67 (emphasis added).

The network recited to define the "network interface" denotes the capability of the network interface rather than the presence of a network. The "network" recited in the non-transitory-memory clause denotes the presence and use of a network when a processing device performs the operations indicated by the code stored in the memory. This indicates that the only network required by operation of the claim is first introduced as "a network" of the provide step and later referenced as "the network" in the receive step. Given the structure of the claim, it is reasonably certain that "receive, over the network" refers to receiving over the same network that is used to provide the user interface.

Accordingly, the Court construes this term as follows:

- "receive, over the network" means "receive, over the network over which the user interface is provided."

**C.** **"an association of a first image and/or a first text with a first start position of the first video"**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "an association of a first image and/or a first text with a first start position of the first video" <br><br> • '780 Patent Claim 20 | No construction necessary, plain and ordinary meaning. | Plain meaning, i.e., "an association of a first image from a source other than the first video, a first text, or both with a first user-specified start position of the first video." |

**The Parties' Positions**

Plaintiff submits: Defendants' proposed construction is not the plain meaning. Rather, it improperly limits the "first image" to an image "from a source other than the first video" and the "first start position" to a "user-specified start position." Dkt. No. 136 at 13.

Defendants respond: In the context of the surrounding claim language defining the user interface via which the association is received, the "first image" refers to an image that is from a

15

source other than the first video and the first start position of the first video is a user-specified position. This is because the user interface is specified in the claim as enabling a user to associate "an image not from the given video" with a "user-specified position of the given video." The construction should "align[] what is received via the user interface with what the user interface is described as enabling a user to do." Dkt. No. 150 at 24–25.

Plaintiff replies: Defendants' construction improperly limits rather than clarifies claim scope. Dkt. No. 153 at 7–8.

## <u>Analysis</u>

The issue in dispute distills to whether the first image and first start position of the association received via the user interface are necessarily limited, respectively, to the "image not from the given video" and "user-specified position" recited to define the user interface. They are not.

The Court is not convinced that the recited capabilities of the user interface should limit otherwise broader language in the claims. Plainly, "a first image" is broader than "a first image from a source other than the first video." Even if the user interface must enable "a user to associate an image not from the given video" with a position, nothing in the claim restricts the user interface to only images not from the given video. Similarly, even if the user interface must enable a user to associate an image or text "with a user-specified position of the given video," nothing in the claim restricts the user interface to only user-specified positions. Simply, Defendants have not justified their narrowing rewrite of the claim.

Accordingly, the Court rejects Defendants' proposed construction and determines that this term has its plain and ordinary meaning without the need for further construction.

### D. "cause the first image and/or the first text to be presented at the first start position, during playback of the first video"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "cause the first image and/or the first text to be presented at the first start position, during playback of the first video"<br><br>• '780 Patent Claim 20 | No construction necessary, plain and ordinary meaning. | Plain meaning, i.e., "cause the first image, the first text, or both to be presented at least when playback of the first video reaches the first start position." |

### The Parties' Positions

Plaintiff submits: Defendants' proposed construction is not the plain meaning. Rather, it improperly limits the scope of the term to require that the image and/or text be presented "when playback of the first video reaches the first start position" rather than just "during playback of the first video." Dkt. No. 136 at 14–16.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '780 Patent Fig.10, col.28 l.63 – col.29 l.4.

Defendants respond: The "first start position" in this term refers to a playback position in the video and causing an image or text to be presented at this position during playback of the video plainly means causing the image or text to be presented when the video reaches this position during playback. This does not exclude presenting the image or text at other positions, but it requires presenting the image at least at the first start position when that position is reached during playback. Dkt. No. 150 at 26–27.

In addition to the claims themselves, Defendants cite the following **intrinsic evidence** to support their position: '780 Patent col.2 ll.23–30, col.2 ll.48–52, col.27 ll.7–18, col.27 ll.27–32.

Plaintiff replies: Defendants' proposed construction improperly "requires that the first image/first text be presented at a specific time during playback." The plain meaning of presenting

an image or text "during playback of the first video" is not limited to presenting at any specific time during playback. Dkt. No. 153 at 8–9.

Plaintiff cites further **intrinsic evidence** to support its position: '780 Patent col.2 ll.17–37.

**<u>Analysis</u>**

The issue in dispute is whether causing an image or text to be presented at a start position of a video during playback of the video necessarily entails causing the image or text be presented when the start position is reached during playback of the video. The claim language requires that the image or text be displayed during playback when the playback is at the first start position.

Causing an image or text to be presented "at the first start position, during playback of the first video" refers to presenting the image or text at the start position when playback of the video is at that position. Plaintiff appears to focus on the broad meaning of "during playback" while giving no weight to "at the first start position." As explained in the '780 Patent, an image or text may be associated with a particular start frame or time in the video for reference during playback. For instance, the patent provides:

> A given item review within the video review file ***may be time stamped*** by the user via a user interface, the ***time stamp indicating at what <u>point in time in the video review file the review of the given item begins/occurs</u>***. Other techniques may be used to identify the location/position of a given item review within a video review. For example, a frame number may be identified as the point at which the item review for the given item begins. A control may be provided to the user at the same time the video review is displayed, where the user can activate the control to ***<u>indicate the start</u> of an item review and/or to add tags associated with the item review***.

'780 Patent col.2 ll.23–33 (emphasis added). The patent similarly provides:

> A given product review within the video review file may be time stamped, indicating at what point in time in the video review file the review of the given product begins/occurs. ***The time stamp, which may be in the form of a "start" tag*** automatically generated by the user ***indicating where the start of the product review is***, may be recorded in metadata associated with the video review. Other techniques may be used to identify the location/position of a given product review within a video review. For example, a frame number may be identified as that point

> at which the product review for the given product begins. The frame number may
> be recorded in metadata associated with the video review.

*Id.* at col.27 ll.7–19 (emphasis added); *see also*, col.34 ll.27–33 ("An 'add a product' control is provided, which when activated by the user, causes a tag or other indicator to be stored in association with the ***current point in the video review*** being displayed and/or the current position of the scrubber control in the timeline. This tag or other indicating may be used by the system to ***indicate the beginning point of the item review within the video review***." (emphasis added)). The patent also discloses that the user may play the video by jumping to selected portions of the video. *See, e.g., id.* at col.29 ll.1–4 ("In certain embodiments, a viewer may click on or otherwise select a given product image and/or tag in the scrubber area 104**,** and the video player will jump to the corresponding item review."). In this context, the natural reading of displaying an image at a start point during playback of the video is that the image is displayed when the playback is at that point (e.g., time or frame).

Accordingly, the Court construes this term as follows:

- "cause the first image and/or the first text to be presented at the first start position, during playback of the first video" means "cause the first image, the first text, or both to be presented when playback of the first video is at the first start position."

**E.    "in or adjacent to a playback area of a video player"**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "in or adjacent to a playback area of a video player"<br><br>• '780 Patent Claim 20 | No construction necessary, plain and ordinary meaning. Not indefinite. | Plain meaning, i.e., "in or adjacent to the portion of the video player where playback occurs." |

### The Parties' Positions

Plaintiff submits: The meaning of the term is plain and does not require construction. Dkt. No. 136 at 16.

Defendants respond: "Defendants are only attempting to clarify that a 'playback area' is the portion of the video player where playback occurs." Dkt. No. 150 at 27.

Plaintiff replies: "Defendants have not asserted, let alone identified any dispute, regarding the scope of this term. … Therefore, the term does not require construction." Dkt. No. 153 at 10.

### Analysis

It is not clear what issue, if any, is in dispute. The parties did not object to the Court's construction when proposed at the hearing.

Accordingly, the Court adopts the following construction:

- "playback area of a video player" means "area of a video player where playback is displayed."

### F.    "scrubber area"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "scrubber area"<br><br>• '780 Patent Claim 25 | the area that allows for scrubbing through frames of a video | Plain meaning, i.e., "an area including a scrubber bar and optionally including an area adjacent to the scrubber bar." |

### The Parties' Positions

Plaintiff submits: The meaning of scrubber area is provided in the claim itself: "the scrubber area comprising a slider tool that enables a user to scrub forwards through the first video by dragging the slider tool." Notably, the scrubber area need not include a scrubber bar, as Defendants propose. As described in the '780 Patent, the scrubber bar is optional. Further, Defendants' proposed language "optionally including an area adjacent to the scrubber bar" does

not change the meaning of "scrubber area." "As long as the area adjacent to the scrubber bar has scrubber control (i.e., allows for scrubbing), then that area is part of the scrubber area. If, however, the area adjacent to a scrubber bar does not allow for scrubbing (i.e., no control to browse frames of a video), then that area is not part of a scrubber area." Dkt. No. 136 at 17–20.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '780 Patent col.2 ll.42–48. **Extrinsic evidence**: Dkt. No. 136-2 at 25–26, 66.

Defendants respond: The term "scrubber area" is defined in the '780 Patent (citing '780 Patent col.2 ll.42–48). This definition expressly states that the scrubber area may "optionally includ[e] an area adjacent to the scrubber bar." The patent further describes "that images or tags displayed adjacent to the scrubber bar fall within a 'scrubber area'" (citing *id*. at col.28 l.63 – col.29 l.4). Plaintiff's argued construction runs contrary to the patent's description of the scrubber area in that Plaintiff would exclude an adjacent area that does not have scrubber control. The patent also equates a "slider tool" with a "scrubber bar" (citing *id*. at fig.12, col.22 ll.20–23), thus "scrubber bar" is the proper construction. Finally, the patent's description of "other controls" "simply explains that a scrubber bar is just one type of control that can be used and that other controls can be used as long as the control is one that a user can utilize to 'drag[] a scrubber control in a scrubber timeline.'" Thus, the "other control" is necessarily part of the scrubber bar. Dkt. No. 150 at 28–32.

In addition to the claims themselves, Defendants cite the following **intrinsic evidence** to support their position: '780 Patent Figs.10, 12, col.2 ll.42–48, col.22 ll.20–33, col.27 ll.23–27, col.28 l.63 – col.29 l.4, col.31 ll.61–65.

Plaintiff replies: The "scrubber area" does not include areas that do not allow for scrubbing. Dkt. No. 153 at 10.

**Analysis**

There appear to be two issues in dispute. First, whether the "scrubber area" necessarily includes a "scrubber bar." It does not. Second, whether the "scrubber area" may include an area adjacent to a scrubber bar. It may include a scrubbing area adjacent to a scrubber bar but does not encompass just any area adjacent to a scrubber bar.

Claim 25 provides significant context that informs the meaning of "scrubber area." Specifically, the claim provides:

> **25**. The system as defined in claim 20, wherein the video player is configured to:
> display the first image and/or the first text in a ***scrubber area***, ***the scrubber area <u>comprising</u>*** a slider tool that enables a user to scrub forwards through the first video by dragging the slider tool.

'780 Patent col.48 ll.62–67 (emphasis added). Thus, the claim provides that the scrubber area includes a "slider tool" of specific capabilities.

The scrubber area does not necessarily include a "scrubber bar." The '780 Patent describes a "scrubber area" consistent with claim language, but it does not define it as Defendants suggest. For example, the patent provides:

> An image from a given item review may be displayed in a ***scrubber area*** (***<u>e.g.,</u>*** ***an area including a scrubber bar or other control*** that a user can utilize (e.g., by dragging a scrubber control in a scrubber timeline) to indicate where the user wants the video playback to begin or to browse frames in the video, and ***<u>optionally</u> including an area adjacent to the scrubber bar***). Thus, for example, the scrubber area may display images of items being reviewed in the video review file, where a given item image is displayed in the scrubber timeline at a location corresponding to where the review of the respective item begins. The item image may be a frame from the review of the item, such as, by way of example, the first frame from the review of the item. Optionally, other frames from a given item review are not presented in the timeline when the scrubber is static, in that the scrubber control is not being manipulated by the user or otherwise in motion.

*Id*. at col.2 ll.42–58 (emphasis added). The use of "e.g." indicates that this language is expressly exemplary, not definitional—the scrubber area may include an "other control" instead of a scrubber bar. Further, the patent does not equate a "slider tool" with a "scrubber bar." Rather, it equates "slider tool" with "scrubber." *Id*. at col.22 ll.20–27 ("Slider tool 910 (also referred to as a scrubber herein) is provided in an embodiment to enable a user to select a portion of a review based on an upward or downward spike on line 906."). The slider tool 910 though depicted as a bar in Fig. 12 does not mean that it is limited to a bar such that "slider tool" and "scrubber bar" are strictly coextensive. The better interpretation is that a "scrubber bar" is a species of a slider tool.

The "scrubber area" is defined in Claim 25 using an open-ended "comprising" transition. Thus, the scrubber area may include more than the slider tool. This is consistent with the patent's description that the scrubber area may optionally include an area adjacent to a scrubber bar (or other tool). This open-ended nature is plain without construction. In the context of the patent, however, a "scrubber area" is not simply a scrubber bar (or other tool) and any adjacent area. Rather, the adjacent area is also a scrubbing area that enables the user to select a particular time of frame for playback. For instance, the patent provides:

> At state 2012**,** the identified video reviews are provided for display on the user terminal, organized in categories, with selected representative item review frames displayed in the scrubber area (e.g., on the scrubber or adjacent to the scrubber). The entire scrubber area, or a subset thereof, including the representative frame, may be a hot spot, wherein if the user clicks anywhere in the hotspot, the corresponding item review is played back. Thus, optionally, the searching user does not have to manually manipulate the scrubber control to the desired item review start location.

*Id*. at col.31 l.61 – col.32 l.4.

This teaches that the scrubber area may include a scrubber (i.e., "slider tool," *id*. at col.22 ll.20–21) and areas adjacent to the scrubber that can be used to move to desired locations in the

video without dragging the scrubber control. *See also, id.* at col.29 ll.1–4 ("In certain embodiments, a viewer may click on or otherwise select a given product image and/or tag in the scrubber area 104, and the video player will jump to the corresponding item review."). Further, the patent does not disclose areas that are part of the scrubbing area but that are not functional for selecting a particular point in a video. The patent's only reference to "non-functional" in the context of scrubber area appears to be the following: "Optionally, some or all of the search results may include a timeline in a scrubber area or a representation of a scrubber area (which may be non-functional), or independent of a scrubber area." *Id.* at col.30 ll.11–14. This passage is not describing that a scrubber area may be non-functional, but rather that a representation of a scrubber area may be non-functional. The patent also discloses areas adjacent to a scrubber that are described as distinct from the scrubber area. *See, e.g., id.* at fig.10, col.28 l.11 – col.29 l.4 (distinguishing scrubber area 1002 from other areas 1004, 1006, 1008). On balance, the patent does not use the term "scrubber area" to encompass any area adjacent to a scrubber bar (or other control) but rather to encompass an area adjacent to a scrubber bar (or other control) that enables user selection of a particular point in the video.

Finally, the Court rejects Plaintiff's proposed construction. The claim itself states "the scrubber area comprising a slider tool that enables a user to scrub forwards through the first video by dragging the slider tool." This indicates that the scrubber area enables a user to scrub **forwards** through the first video. Plaintiff's construction appears either redundant or improperly limiting in that it suggests that the scrubber area necessarily allows for scrubbing forwards and backwards through the video.

Accordingly, the Court rejects both Plaintiff's and Defendants' proposed constructions and further determines that this term has its plain and ordinary meaning without the need for further construction.

## V.     CONCLUSION

The Court adopts the constructions above for the disputed and agreed terms of the '780 Patent. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 13th day of May, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE